UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEREK A. THOMAS,            )
                                  )
      Plaintiff,          )
                                    )
     v.                    )   Case No. 1:19-cv-11982-NMG
                                    )
STEPHEN SPAULDING et al.,    )
                                  )
      Defendants.     )

REPORT AND RECOMMENDATION REGARDING MOTIONS FILED BY DEFENDANTS
FOR A MORE DEFINITE STATEMENT, TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS, AND FAILURE TO STATE
A CLAIM AND PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED
COMPLAINT
(Dkt. Nos. 78, 83, 85, 95, 105)

ROBERTSON, U.S.M.J.

I.    Introduction

Plaintiff Derek A. Thomas ("Plaintiff" or "Thomas"), presently an inmate of FMC

Devens following a conviction for production of child pornography, brings claims pursuant to

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971),

alleging violations of his First, Fifth, and Eighth Amendment rights against nineteen named and

four John Doe Bureau of Prison ("BOP") employees.  In summary Plaintiff alleges that BOP

employees failed to protect him from assault and to provide him with adequate medical care and

retaliated against him for filing grievances.  The named defendants filed a motion for a more

definite statement under Fed. R. Civ. P. 12(e) (Dkt. No. 78).  Subsequently, defendants Jamie

Baker, J.R. Bell, Jacqueline Carmichael, Erin Conner, Gabriel DeZayas, Tracy Joslyn, Christina

Morley, Karl Norris, Corey Pointer, and Matthew Worthington (collectively, "the Foreign

Defendants") filed a motion to dismiss for lack of personal jurisdiction and insufficient service

pursuant to Fed. R. Civ. P. 12(b)(2) and (5) (Dkt. No. 83), followed by an amended motion to dismiss on the same grounds or, in the alternative, for a more definite statement, which amended motion was filed with leave of court (Dkt. No. 105).   Defendants Stephen Spaulding, Dave Taylor, Daniel Quist, Scott Murray, Kimo Elraheb, Patricia Ruze, Kelly Fricker, and Paul Anderson (collectively, "the Massachusetts Defendants") moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state cognizable claims (Dkt. No. 85).   For his part, Plaintiff has filed a motion for leave to file an amended complaint (Dkt. No. 95).   These motions have been referred to the undersigned for report and recommendation (Dkt. Nos. 96, 105).   *See* 28 U.S.C. § 636(b)(1)(B).   For the reasons set forth below, I recommend that the District Court grant Plaintiff's motion for leave to file an amended complaint; deny the defendants' motion for a more definite statement, deny the Foreign Defendants' motion and their amended motion to dismiss for lack or personal jurisdiction or insufficient service of process; and grant the Massachusetts Defendants' motion to dismiss for failure to state a claim.   I further recommend that the District Court consider transferring Plaintiff's remaining claims to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

II.     Plaintiff's Motion for Leave to File an Amended Complaint

As an initial matter, I recommend that the District Court grant Plaintiff's motion for leave to file an amended complaint (Dkt. No. 95-1).[1]   The standard for judging whether to grant a motion for leave to file an amended complaint is well-settled:

---

[1] Plaintiff did not attach a new set of exhibits to the proposed amended complaint.   I assume he intended the exhibits he filed with his initial complaint to be considered as filed in connection with the proposed amended complaint.   Exhibits attached to a complaint are deemed incorporated by reference in the operative pleading and may be relied upon in connection with ruling on a motion to dismiss a complaint.   *See, e.g., Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 1998) (in deciding a motion to dismiss, a court may consider "facts extractable from documentation annexed to … the complaint …").

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed.  A plaintiff is permitted to amend a complaint once as a matter of right prior to the filing of a responsive pleading by the defendant.  Fed. R. Civ. P. 15(a).  Thereafter, the permission of the court or the consent of the opposing party is required.  The default rule mandates that leave to amend is to be "freely given when justice so requires," *id.*, unless the amendment "would be futile, or reward, *inter alia,* undue or intended delay."  *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994).

*Steir v. Girl Scouts of the USA,* 383 F.3d 7, 11-12 (1st Cir. 2004); *see also Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013).  "Amendment of pleadings is largely a matter within the discretion of the district court."  *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010) (citing *Farkas v. Texas Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir. 1970)).

A party is entitled as of right to file an amended complaint if the party does so within 21 days after service of "a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(B).  Generally, in other circumstances, a party may amend the complaint only with the opposing party's written consent or with leave of court.  Fed. R. Civ. P. 15(1)(2).  Plaintiff is not entitled to file an amended complaint as of right in the instant action because he did not do so within 21 days of the date on which the defendants filed their Fed. R. Civ. P. 12(e) motion (Dkt. No. 78).  The defendants oppose Plaintiff's motion for leave to amend his complaint on grounds of futility (Dkt. No. 97).

Thomas states that the purpose of his proposed amendments is to cure errors and omissions and he has provided a table of contents describing the amendments (Dkt. No. 95).  His motion was by no measure unduly delayed, nor would allowing the motion prejudice the defendants.  While Thomas did not file within Rule 15(a)(1)(B)'s 21-day protective window, he only missed that mark by some 17 days notwithstanding that he is incarcerated.  He sought leave to amend his complaint primarily to respond to some of the deficiencies identified in the

defendants' motions to dismiss.  The case remains in the very early stages.  None of the defendants has answered the initial complaint, the court has not set a deadline for the filing of motions for leave to amend pleadings, and the parties have not conducted any discovery.  *See Ramirez v. DeCoster*, No. 2:11-cv-00294-JAW, 2012 WL 2367179, at *6-7 (D. Me. June 21, 2012) (granting plaintiff leave to file a second amended complaint where no deadline for filing amended pleadings had been set, the plaintiff timely moved to further amend the complaint, and the proposed amendments sought to correct issues raised in pending motions to dismiss).  Plaintiff's proposed amendments do not change or add significantly to the factual allegations in his initial complaint (Dkt. No. 95).  For this reason, accepting the amended complaint as the operative pleading will not interfere with the District Court's ability to consider the defendants' pending motions to dismiss – in their present form – on their merits.  *See Santiago v. WHM Carib, LLC*, 126 F. Supp. 3d 211, 214 (D.P.R. 2015) (granting plaintiffs' motion for leave to file a second amended complaint where the proposed amendments did not substantially change the theory of the case).

Finally, granting Plaintiff's motion to file an amended complaint would not interfere with judicial economy and efficiency.  *See EMC Corp. v. Pure Storage, Inc.*, 310 F.R.D. 194, 202-03 (D. Mass. 2015) (considering judicial economy and efficiency as a factor in deciding whether to grant a plaintiff's motion for leave to further amend the operative complaint).  "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)."  *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).  If the District Court grants Plaintiff's motion for leave to file an amended complaint, there will

be no need to consider the defendants' futility argument separately from consideration of the Massachusetts Defendants' pending Rule 12(b)(6) motion because the futility argument would be evaluated by the same standard that applies to their argument that the complaint fails to state a claim upon which relief can be granted.  Thus, for example, in the *Ramirez* case, observing that "[t]he Defendants' futility arguments fuse with the motion to dismiss standard[,]" the court granted the plaintiff's motion for leave to file a second amended complaint over the defendants' opposition and ruled on the defendants' pending motions to dismiss in light of the allegations in the second amended complaint.  *See Ramirez*, 2012 WL 2367179, at *7 (citing *Glassman*, 90 F.3d at 623; *Gagliano-McFarland v. Giri Cmty. Drive LLC*, No. 1:10-cv-490-GZS, 2011 WL 1883191, at * 1-2 (D. Me. May 16, 2011), *aff'd*, 2011 WL 2472807, at *1 (D. Me. June 22, 2011)).  In the instant case, the District Court should follow the course adopted by the *Ramirez* court.

For the foregoing reasons, I recommend that the court grant Plaintiff's Motion for Leave to File an Amended Complaint.  Below, I set out relevant factual allegations and make recommendations regarding the defendants' pending motions to dismiss relying on the contents of the proposed amended complaint.

III.    <u>Factual Background</u>

A.  Failure to Protect Plaintiff.

Plaintiff was transferred to USP Terre Haute in September 2017 due to safety concerns (Amended Compl. ¶¶ 27, 32).  Inmate Gary Long, Jr. ("Long") was assigned to Plaintiff's cell on October 9, 2017 (Amended Compl. ¶ 36).  Long, who was known by staff to be a violent and psychologically disturbed inmate, beat Plaintiff unconscious on the first night they shared a cell

(Amended Compl. ¶¶ 36-37).[2]  On October 10, 2017, Plaintiff notified the staff that he was being assaulted and asked to be transferred (Amended Compl. ¶ 40).  Conner and Joslyn ignored Plaintiff's plea for help (Amended Compl. ¶¶ 41, 43).  On October 16 and November 3, 2017, Plaintiff again notified USP Terre Haute staff that Long had assaulted him; his requests not to be housed in a cell with Long were again denied or ignored (Amended Compl. ¶¶ 44, 48).  On November 3, 2017, Plaintiff and Long were transferred from USP Terre Haute to the special housing unit ("SHU") in FCI Terre Haute (Amended Compl. ¶ 48).  On November 7, 2017, Carmichael failed to respond to Plaintiff's request for assistance (Amended Compl. ¶¶ 50-51).

According to Plaintiff, on November 15, 2017, after Plaintiff again reported Long's abuse to Carmichael, Long raped him (Amended Compl. ¶¶ 52-53).  On November 22, 2017, Plaintiff was removed from the cell he occupied with Long.  Questioned about injuries, Plaintiff reported gouges on his arm, bruises on his abdomen and rib cage, and broken teeth.  He did not report rape.  After Plaintiff made his report, he was placed in a private cell (Amended Compl. ¶ 57).  Plaintiff claims that he was not evaluated by medical services on November 22, 2017, that the medical services report prepared by Norris is false, and that BOP staff violated regulations or policies promulgated to promote the goals of the Prison Rape Elimination Act, 42 U.S.C. ¶ 15601, *et seq.* (now 34 U.S.C. § 30301 *et seq.*) ("PREA") (Amended Compl. ¶ 58).

B.  Failure to Provide Adequate Medical Care.

---

[2] Case law indicates that Long was charged by information with the commission of kidnapping, burglary, larceny, and aggravated sexual abuse.  He pled guilty to aggravated sexual abuse.  He was fifteen years old when he engaged in the criminal conduct that led to the charges.  According to the presiding District Judge, Long broke into the residence of the victim, where he raped her.  He then kidnapped her, drove her to a remote location, and murdered her.  On April 14, 2003, Long was sentenced to 45 years (540 months) in custody.  *Long v. United States*, 1:18-CV-01007-CBK, 2018 WL 9961318 (D.S.D. Apr. 11, 2018).  Prior to the charged offenses, "[t]he defendant, although a young man, had been terrorizing the small town in which he lived."  *Long v. United States*, No. CIV 13-1012, 2014 WL 1453312 (D.S.D. Apr. 14, 2014).

According to Plaintiff, requests for medical treatment and counseling that he initiated in or around November 2017 were ignored by Joslyn and others (Amended Compl. ¶ 59). Carmichael also ignored Plaintiff's requests for medical services following his report of a rape (Amended Compl. ¶¶ 62-63). On January 1, 2018, Baker and Conner interviewed Plaintiff about his report that Long had raped him. He was told that a PREA investigation was being opened (Amended Compl. ¶¶ 64-65). He was not told that he was entitled to the appointment of a victim advocate to assist him with the interview process and none was present (Amended Compl. ¶ 66). On January 11, 2017 (probably intended to be 2018), Plaintiff asked Morley for the appointment of a victim advocate from a community-based organization (Amended Compl. ¶ 68). On January 19, 2018, when Plaintiff was re-interviewed in connection with the PREA investigation, no victim advocate was present and medical staff conducted a physical examination of Plaintiff in a deliberately humiliating manner (Amended Compl. ¶¶ 69-70). On January 29, 2018, Plaintiff was told that his PREA claim had been found to be unsubstantiated (Amended Compl. ¶ 72).

Plaintiff left FCI Terre Haute on February 12, 2018 (Amended Compl. ¶ 73). On or around February 22, 2018, after he arrived at MDC Brooklyn, he met with psychologist DeZayas. He alleges that DeZayas' report of what Plaintiff said during this meeting is false (Amended Compl. ¶¶ 74-75 & Dkt. 1-2 at 44).

Plaintiff arrived at FMC Devens on March 1, 2018 (Amended Compl. ¶ 76). Over the course of the next few months, members of the FMC Devens medical staff repeatedly refused his requests for surgery for his hernia despite his complaints of pain (Amended Complaint ¶¶ 76-78, 80, 96, 100, 109). In or around January 2019, Ruze told Plaintiff that the BOP does not treat hernias, that surgery for his hernia was considered elective or cosmetic, and that he could get the hernia repaired when he was released from prison (Amended Compl. ¶ 109).

Plaintiff also alleges that, after he disclosed his history of sexual assault in prison, FMC Devens psychologists Fricker and Anderson, along with Spaulding and Elrahed, were deliberately indifferent to his serious medical needs and violated PREA requirements by failing to provide him with the services of a qualified victim advocate and a community-based psychologist (Amended Compl. ¶¶ 82-85, 99, 103-04, 107, 111-122).

C. Violation of Plaintiff's First and Fifth Amendment Rights by Confinement in the SHU.

On August 6, 2018, Plaintiff wrote to the BOP Office of Internal Affairs to alert BOP officials that Leonard Waslyk, an inmate against whom Plaintiff had made a PREA claim when they were held at FCI Allenwood, had been transferred to FMC Devens and was assigned to the same unit to which Plaintiff was assigned.  While stating that he did not fear for his personal safety, Plaintiff asked that Waslyk be moved to another BOP facility (Amended Compl. ¶ 86; Dkt. No. 1-2 at 58-60).  On August 20, 2018, Plaintiff was placed in the SHU at FMC Devens for purposes of a special investigative service ("SIS") investigation because he had accused BOP staff at FCI Allenwood of misconduct for failing properly to investigate Plaintiff's allegations about Waslyk's misconduct.  Plaintiff alleges that Taylor told Plaintiff that Plaintiff was in the SHU, which was traumatic and where he was deprived of his liberties, even though the lock-up order did not apply to Plaintiff and that Taylor threatened Plaintiff and kept him in the SHU to coerce a statement from Plaintiff that was favorable to FCI Allenwood staff members (Amended Complaint ¶¶ 88, 92).  According to Plaintiff, while he was in the SHU, he met with Fricker and made a complaint about Taylor's conduct.  Fricker told him she had filed a complaint about Plaintiff's SHU placement and Taylor's conduct, but refused Plaintiff's request to meet with him in a private setting in violation of BOP policy.  As a result, other inmates threatened Plaintiff's life for being a snitch (Amended Compl. ¶¶ 90-91).  After Plaintiff was released from the SHU,

he was told to undress in front of Waslyk, who stared at Plaintiff's genitals and announced he

was going to tell the other inmates that Plaintiff was a rat and "begged for it." According to

Plaintiff, because of these events, he is an outcast at FMC Devens (Amended Compl. ¶ 94).

Plaintiff alleges that Spaulding's decision to keep Waslyk at FMC Devens was unreasonable and

in violation of PREA (Amended Compl. ¶ 95).

IV.   Discussion

A.   The Court Should Deny the Defendants' Rule 12(e) Motion
     for a More Definite Statement (Dkt. No. 78).

I recommend that the District Court deny the defendants' motion for a more definite

statement. Rule 12(e) provides that a party may move for a more definite statement in a

complaint when the pleading "is so vague and ambiguous that the party cannot reasonably

prepare a response." Fed. R. Civ. P. 12(e). The named defendants moved collectively for a

more definite statement in a July 6, 2020 motion, arguing that the complaint was overly detailed

and did not comply with Fed. R. Civ. P. 8(a)(2)'s requirement of "a short and plain statement of

the claim" or Fed. R. Civ. P. 10(b)'s provision that "[i]f it would promote clarity, each claim

founded on a separate transaction or occurrence … must be stated in a separate count" (Dkt. No.

78 at 2, Dkt. No. 79 at 5-9).

> Rule 12(e) motions are generally disfavored in light of the liberal pleading
> requirements under the Federal Rules, *see e.g., Conley v. Gibson*, 355 U.S. 41, 47-
> 48 … (1957), and the availability of pretrial discovery procedures, *see Cox v. Me.
> Mar. Acad.*, 122 F.R.D. 115, 116 (D. Me. 1988). Thus, courts have asserted that
> Rule 12(e) motions should be addressed not to lack of detail but rather to
> unintelligibility which thereby prevents the movant from "determin[ing] the
> issues he must meet." *Haghkerdar v. Husson Coll.*, 226 F.R.D. 12, 14 (D. Me.
> 2005) (quoting *Cox*, 122 F.R.D. at 116).

*Hilchey v. City of Haverhill*, 233 F.R.D. 67, 69 (D. Mass. 2005). "In ruling on a Rule 12(e)

motion, a court often considers whether the movant has knowledge of the information sought."

*Vizcaino v. Isaac*, Civil Action No. 15-11565-LTS, 2016 WL 1163652, at *3 (D. Mass. Feb. 12, 2016) (citing *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 135 (D.N.H. 1984)). That a complaint does not identify in which events a defendant was allegedly involved does not necessarily entitle the defendant to a more definite statement. *See Cox*, 122 F.R.D. at 117. Further, "[a] document filed by a *pro se* party 'is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Tierney v. Town of Framingham*, 292 F. Supp. 3d 534, 540 (D. Mass. 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Plaintiff's amended complaint includes conclusory assertions that may and should be disregarded, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and may be overly detailed, but it is intelligible and it adequately places the defendants on notice of what Plaintiff claims each of them did wrong. Plaintiff has placed his factual allegations in context by setting out the constitutional violations he alleges the defendants committed, then detailing, in chronological order, the factual allegations that, he contends, support these claimed constitutional violations (Amended Compl. at 6, 14, 21). In summary, Plaintiff alleges that, while he was incarcerated at USP and FCI Terre Haute, Conner, Cook, Joslyn, Carmichael, and Norris violated his Eighth Amendment rights by failing to protect him from assaults and, ultimately, rape by a violent cellmate despite his repeated complaints about the circumstances of his confinement (Amended Compl. ¶¶ 36-57). He further claims that after he reported the assaults and rape and while he was still at FCI Terre Haute, his Eighth Amendment rights were violated by a failure to conduct an investigation that was adequate by PREA standards and to provide him with adequate medical care after the alleged assaults. He identifies defendants Norris, Joslyn, Carmichael, Baker, Conner, Worthington, Morley, and Pointer as the Terre Haute

actors responsible for these alleged constitutional violations (Amended Compl. at ¶¶ 14-20, 22, 24, 58-72).  Plaintiff further alleges that his Eighth Amendment right to adequate medical care was violated during the approximately 8 days he was at MDC Brooklyn by DeZayas' filing of a false medical report (Amended Compl, ¶¶ 74-75).

With respect to claims against the Massachusetts Defendants working at FMC Devens, Plaintiff alleges that he was deprived of adequate medical care in violation of the Eighth Amendment by the failure to refer him for surgery for his hernia.  He is specific about the dates of his medical appointments, the identity of the treating care providers with whom he had the appointments, his requests for treatment or accommodation, and failures or refusals to provide the requested treatment (Amended Compl. ¶¶ 77, 80, 96, 109).  He attached some of his FMC Devens medical records as exhibits (Dkt. No. 1-2 at 46-47, 49, 51, 70, 77-79, 90-91, 122, 129-132).  Plaintiff is similarly specific in his allegations about failures to comply with PREA requirements and to provide him with adequate counseling services following the sexual assault he asserts was committed by Long (Amended Compl. ¶¶ 82-85, 99, 103-08, 111-122).  "The Plaintiff's factual allegations are detailed and specific …." *Haghkerdar*, 226 F.R.D. at 14.  The Amended Complaint "adequately places [the defendants] on notice of what the Plaintiff claims [they] did wrong and allows [the defendants] to frame … responsive pleadings[s]." *Id.*  While it may take some effort, it is possible to "sift the wheat from the chaff to determine [Plaintiff's] key factual allegations and the nature of his claims[s]." *Jutras v. Lopez*, No. 1:18-cv-00051-JDL, 2018 WL 3117228, at *2 (D. Me. June 25, 2018) (denying a motion for a more definite statement where it was possible to discern the nature of the claims asserted by the *pro se* plaintiff in a 122-page complaint with attachments).

The defendants' contention that the Amended Complaint is insufficient because Plaintiff failed to include allegations addressed to the exhaustion of administrative remedies ignores controlling case law (Dkt. No. 79 at 8).  The Supreme Court has held that "[f]ailure to exhaust is an affirmative defense under the [Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)], and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  *See also Sergentakis v. Channell*, 272 F. Supp. 3d 221, 226 (D. Mass. 2017).  It is black letter law that Plaintiff had no obligation to address the exhaustion of administrative remedies in his complaint.

The argument that a more definite statement is needed because the Amended Complaint fails to specify whether the defendants are sued in their personal or official capacity is similarly unavailing.  Each of the defendants is sued in his or her "official and/or personal capacity" (Amended Compl. ¶¶ 5-27).  "A *Bivens* action only may be brought against federal officials in their individual capacities."  *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000), *abrogated on other grounds by de Aza-Paez v. United States*, 232 F.3d 552 (1st Cir. 2003).  Any reference to claims brought against the defendants in their official capacity may be treated as mere surplusage and ignored.

To the extent defendants contend that the operative complaint does not establish a basis for personal jurisdiction over defendants who were employed at FCI Terre Haute or MDC Brooklyn or for joinder of claims against all defendants under the provisions of Fed. R. Civ. P. 20, deficiencies of this nature are properly addressed by motion.  *See* Fed. R. Civ. P. 12(b)(2); Fed. R. Civ. P. 21.

For the foregoing reasons, I recommend that the defendants' motion for a more definite statement be denied.

B.  The Foreign Defendants Waived their Right to Assert
Defenses under Rule 12(b)(2) and (5).

Foreign Defendants Pointer, Conner, Bell, Joslyn, Morley, Worthington, Carmichael,

Norris, Baker, DeZayas, and Cook have moved to dismiss Plaintiff's complaint pursuant to Fed.

R. Civ. P. 12(b)(2) and 12(b)(5) (Dkt. Nos. 83, 105).  The motion asserts that Plaintiff failed to

serve defendants Morley, Cook, and unidentified John Does in compliance with Rule 4(i) of the

Federal Rules of Civil Procedure and that this court lacks personal jurisdiction over Pointer,

Conner, Bell, Joslyn, Worthington, Carmichael, Norris, Baker, and DeZayas, all of whom were

served (Dkt. No. 84 at 1).  Plaintiff alleges that DeZayas was assigned to MDC Brooklyn

(Amended Compl. ¶ 13), and that Bell, Carmichael, Baker, Norris, Worthington, Pointer,

Morley, Joslyn, Conner, and Cook were assigned to FCI Terre Haute at the relevant times

(Amended Compl. ¶¶ 14-20, 22-24).  A plaintiff "bears the burden of establishing that the court

has personal jurisdiction over the defendants." *Brown v. Dash*, Civil Action No. 20-10980-FDS,

2020 WL 6806433, at *6 (D. Mass. Nov. 18, 2020) (citing *Daynard v. Ness, Motley, Loadholt,*

*Richardson & Poole, P.A.*, 290 F.3d 42, 40 (1st Cir. 2002)).  Plaintiff has not attempted to satisfy

his burden of demonstrating that this court has personal jurisdiction over the Foreign Defendants

based on any contacts they had with Massachusetts. *See id.* at *8.  Instead, relying on Fed. R.

Civ. P. 12(g), he argues that these defendants waived their personal jurisdiction and insufficient

service of process defenses by not including those defenses in their initial Rule 12(e) motion

(Dkt. Nos. 98, 113 at 4-5).

1.  Application of Fed. R. Civ. P. 12(g)(2) – the "Raise or Waive" Rule.

Fed. R. Civ. P. 12(b) provides that every defense to a claim for relief in a pleading must

be asserted in the responsive pleading, such as an answer, if a responsive pleading is required.

The defenses of lack of personal jurisdiction (Rule 12(b)(2)) and insufficient service of process

(Rule 12(b)(5)), may, however, be asserted by motion.  Fed. R. Civ. P. 12(g)(2) provides as follows: "*Limitation on Further Motions.*  Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] *must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion*."  (Emphasis added.)  "It is black-letter law that 'a defense based on personal jurisdiction [or insufficient service of process] will be deemed waived if not made by a party's first-filed motion or included in her initial responsive pleading.'"  *Egan v. Tenet Health Care*, 193 F. Supp. 3d 73, 85 (D. Mass. 2016) (quoting *Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F.3d 62, 68 (1st Cir. 2003)).  This rule applies with full force when, as in this case, a party's initial Rule 12 motion is a Rule 12(e) motion for a more definite statement.  Thus, in *Curley v. N. Am. Man Boy Love Ass'n*, No. Civ.A. 00CV10956GAO, 2001 WL 1822730, at *3 (D. Mass. Sept. 27, 2001), noting that the defendants had filed a motion for a more definite statement before moving to dismiss for lack of personal jurisdiction and insufficient service of process, the Honorable George A. O'Toole held that "failure to include these Rule 12 defenses in the Rule 12(e) motion works a waiver of them."  *Id.* (citing *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 692 (1st Cir. 1992) (collecting additional cases); *see also Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 40 (D. Mass. 2006) (discussing the "raise or waive" rule as applied to the defenses of lack of personal jurisdiction and insufficiency of service of process).  "The importance of the rule is to eliminate unnecessary delays in the early stages of a lawsuit by requiring that all Rule 12 defenses be advanced before consideration of the merits of the case."  *Plunkett*, 409 F. Supp. 2d at 40 (citing *Manchester Knitted Fashions, Inc.*, 967 F.2d at 691).

The defendants argue that they did not violate the "raise or waive" rule because one of their arguments in their memorandum in support of their Rule 12(e) motion was that Plaintiff's initial complaint "fail[ed] to make clear how this Court has personal jurisdiction over [the defendants assigned to a BOP facility outside of Massachusetts] and d[id] not include any allegations related to their relationship to the District" (Dkt. No. 79 at 7). The defendants further argue that this court has discretion to consider their late-filed Rule 12(b)(2) and (b)(5) motion because there is some authority to the effect that "[a]lthough not expressly provided for in Federal Rule 12(g) – and potentially contradicted by a strict reading of the waiver provisions of Rule 12(h) – some courts have held that a preliminary motion may be amended [or a second motion filed prior to hearing] to include a defense or objection inadvertently omitted by the movant, thereby avoiding the waiver consequences that would otherwise apply." 5C CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1389 (3d ed. 2004 & Supp. Apr. 2019). The Foreign Defendants filed motions for leave to file a reply and to file an amended Rule 12(b) motion aimed at correcting their initial misstep (Dkt. Nos. 100, 101).

In my view, the circumstances here do not warrant applying the very narrow exceptions to the "raise or waive" rule that may (or may not) exist. First, it seems unlikely that the First Circuit would endorse such exceptions. "Repeatedly, the First Circuit has stated that a party must assert a 12(b)(2) defense in its 'first defensive move, be it a Rule 12 motion or a responsive pleading.'" *Pruco Life Ins. Co. v. Wilmington Tr. Co.*, 616 F. Supp. 2d 210, 214 (D.R.I. 2009) (quoting *Manchester Knitted Fashions, Inc.*, 967 F.2d 691-92); *cf. Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 387-88 (1st Cir. 2001) (discussing interplay between Fed. R. Civ. P. 12(g) and Fed. R. Civ. P. 12(h)(1) and 12(h)(2)). The defendants have not pointed to any controlling or persuasive authority in this circuit or district that considered the merits of an

15

amended or second Rule 12 motion raising a Rule 12(b)(2) or a 12(b)(5) defense omitted from an earlier Rule 12(b) motion, and I have not found any.

Second, although the defendants alluded to a possible lack of personal jurisdiction in their Rule 12(e) memorandum, the motion itself is captioned "Defendants' Rule 12(e) Motion for a More Definite Statement" and does not purport to seek relief based on a claimed lack of personal jurisdiction (or insufficient service of process). The brief reference to a possible lack of personal jurisdiction in the memorandum merely shows that the defense was available to the Foreign Defendants when they filed their Rule 12(e) motion and, thus, should have been raised at that time. *See* Fed. R. Civ. P. 12(g)(2). It is true that in *Polaroid Corp. v. Feely*, 889 F. Supp. 21, 23 (D. Mass. 1995), a case on which the Foreign Defendants rely, the Honorable William G. Young rejected the plaintiff's argument that the defendant had waived the defense of personal jurisdiction. In the *Polaroid* case, however, the defendant was self-represented rather than being represented by an experienced Assistant United States Attorney and, while the self-represented defendant failed to develop the argument that the court lacked personal jurisdiction over him in his initial brief, "this defense *was* stated in the title of the [o]riginal [m]otion." *Id.* The *Polaroid* case is distinguishable from the instant case and provides minimal, if any, support for the Foreign Defendants' contentions.

Finally, the point of Rule 12(g)(2) is to minimize unnecessary delay at the early stages of a lawsuit. *See Plunkett*, 409 F. Supp. 2d at 40. The defendants' conduct has not been consistent with this goal. The defendants repeatedly sought – and were granted – generous extensions of time to file their responses to the complaint (Dkt. Nos. 56, 64, 69, 75). They filed their Rule 12(e) motion on July 6, 2020 (Dkt. No. 78). On July 23, 2020, before Plaintiff filed his opposition or the court ruled on their Rule 12(e) motion, the Foreign Defendants filed their Rule

12(b)(2) and 12(b)(5) motion to dismiss (Dkt. No. 83), followed, on September 18, 2020 by their

motions to for leave to file a reply in support of their Rule 12(b)(2)/12(b)(5) motion *and* a

motion for leave to file an amended Rule 12 motion (Dkt. No. 101), both of which they filed

after the *pro se* Plaintiff persuasively argued that the Foreign Defendants had waived their right

to raise Rule 12(b)(2) and 12(b)(5) defenses (Dkt. No. 98).  The government's obvious misstep

has complicated the case, interfered with judicial efficiency, and contributed to delay in the

resolution of the pending motions.  In the circumstances of this case, I recommend that the court

deny the Rule 12(b)(2) and 12(b)(5) motions of the Foreign Defendants based on the "raise or

waive rule."

> 2.  Plaintiff has not Shown that the Court has Personal Jurisdiction over
>     the Foreign Defendants or that Morley or Cook was Served.

If, however, the District Court declines to adopt the above-stated recommendation, then I

recommend that the District Court dismiss the claims against the Foreign Defendants for lack of

personal jurisdiction or insufficient service of process.[3]  "Personal jurisdiction refers to a court's

'power to require the parties to obey its [orders].'"  *Roberts v. Jack L. Marcus Co.*, Civil Action

No. 17-117882-LTS, 2018 WL 443445, at *2 (D. Mass. Jan. 16, 2018) (alteration in original)

(quoting *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008)).  Where, as in this case, no

evidentiary hearing has been requested, the court employs a prima facie standard and "takes the

plaintiff's 'properly documented evidentiary proffers as true and constru[es] them in the light

most favorable to the [plaintiff's] jurisdictional claim.'"  *Brown*, 2020 WL 6806433, at *7

(alterations in original) (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir.

2016)).  To establish personal jurisdiction over defendants who do not live or work in the

---

[3] Alternatively, the District Court could consider transferring the claims against the Foreign
Defendants to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

Commonwealth of Massachusetts, as is the case with the Foreign Defendants, a plaintiff must put forth some evidence of specific facts showing that personal jurisdiction exists.  *See id.*; *see also Daynard*, 290 F.3d at 50-51.

"General jurisdiction exists when the defendant[s] ha[ve] engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit."  *Daynard*, 290 F.3d at 51 (quoting *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)).  Because Plaintiff has pointed to no evidence to show that any of the Foreign Defendants engaged in continuous and systematic activity in Massachusetts, "[t]his is not such a case …."  *Id.*  "In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction."  *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

For the Foreign Defendants, "the due process clause of the United States Constitution 'protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations."'"  *Roberts*, 2018 WL 443445, at *2 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945))).  There is no suggestion in the amended complaint that the Foreign Defendants had any meaningful contacts, ties, or relations with Massachusetts "such that they would anticipate being haled into court in Massachusetts to respond to allegations concerning" a failure to protect Plaintiff from alleged violence inflicted by a cellmate while Plaintiff was incarcerated at FCI Terre Haute or inadequate medical care while Plaintiff was held at FCI Terre Haute or MDC Brooklyn.  *Id.*  Plaintiff has not met his burden of submitting evidence establishing personal jurisdiction over the Foreign Defendants.  *See id.*; *see also Fields v. Levin*, C.A. No. 19-1100WES, 2020 WL 3001294, at *2-3 (D.N.H. Apr. 16, 2020)

(recommending that the presiding district judge dismiss an apparently viable *Bivens* claim against prison officials in Kentucky who allegedly failed to protect a prisoner from an assault for lack of personal jurisdiction); *Smolka v. United States*, Civil Action No. 08-40166-DPW, 2010 WL 1170438, at *1 (D. Mass. Mar. 25, 2010) ("To the degree that the claims [of failure to protect or deficient medical treatment] concern the actions of individual defendants who performed medical services outside Massachusetts, there is no personal jurisdiction of this court over those defendants.") (citing *Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005)); *cf. Depew v. Hawk*, 20 F. Supp. 2d 132, 134 (D. Mass. 1998) (dismissing a *Bivens* claim for lack of personal jurisdiction over a prison official who allegedly read the plaintiff's correspondence with his attorney because the prison official neither lived nor worked in Massachusetts and took no steps against the plaintiff in Massachusetts).

On motion by Plaintiff, the court extended by 60 days the time for Plaintiff to make service on the defendants (Dkt. Nos. 58, 65).  The Foreign Defendants assert that Plaintiff did not serve Morley or Cook, an assertion Plaintiff has not contested.  Plaintiff has not requested additional time to serve these two defendants nor has he attempted to show good cause why the claims against these two defendants should not be dismissed other than arguing that the defense was waived (Dkt. Nos. 98, 113).  Fed. R. Civ. P. 4(m) provides that, if a defendant is not served within 90 days after the complaint is filed, the court, on its own after notice to the plaintiff, or on motion, should dismiss the complaint unless the plaintiff demonstrates good cause for the failure to effect timely service.  If this defense was not waived, then it should succeed.  *See, e.g., Gonzalez v. Otero*, 172 F. Supp. 3d 477, 497-98 (D.P.R. 2016).

For the reasons set forth above, if the District Court concludes that the Foreign Defendants have not waived their Rule 12(b)(2) and 12(b)(5) defenses of lack of personal

jurisdiction and insufficient service of process, then I recommend that the claims against them be dismissed without prejudice on these bases.

C. Massachusetts Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for Failure to State a Claim.[4]

1. Standard of review

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at *2 (D. Mass. Jan. 9, 2020). In ruling on the motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). "In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Ngomba,* 2020 WL 107969, at *2 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[L]abels and [legal] conclusions, and a formulaic recitation of the elements of a cause of action ...." are insufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such

---

[4] A Rule 12(b)(6) motion to dismiss for failure to state a claim is not subject to the raise or waive rule. "Rule 12(h)(2) ... states that '[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.' Fed. R. Civ. P. 12(h)(2). This provision constitutes an exception to the consolidation requirement of Rule 12(g) ...." *Silva*, 239 F.3d at 388.

facts state a plausible claim for relief." *Ngomba,* 2020 WL 107969, at *2 (citing *Iqbal,* 556 U.S. at 679).

2.  Plaintiff's Claims for Inadequate Medical Care Should be Dismissed.

Plaintiff asserts *Bivens* claims of cruel and unusual punishment in violation of the Eighth Amendment against certain Massachusetts Defendants for deliberate indifference to his medical needs, including a hernia and mental health problems that he attributes to the alleged rape by Long at Terre Haute.  To succeed on a deliberate indifference claim, a plaintiff must, first, show:

> as an objective matter, that he has a "serious medical need[]" that received inadequate [medical] care.  [*Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011)].  A serious medical need is that which "has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.*

*Abernathy v. Anderson*, 984 F.3d 1, 6 (1st Cir. 2020) (first alteration in original) (§ 1983 claim).  "The serious medical need inquiry is fact-specific and must be tailored to the specific circumstances of the case."  *Id.* (citing *Leavitt*, 645 F.3d at 500).  "It is 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes.'"  *Id.* at 7 (quoting *Leavitt*, 645 F.3d at 500).  A plaintiff must show more than a hypothetical risk.  Instead, there must be "an actual risk of harm faced by the plaintiff-inmate who does not receive the medical attention he requests and genuinely needs."  *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)).

Second, even if a plaintiff prisoner establishes a serious medical condition, "the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs."  *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014).  "For the subjective inquiry, the Supreme Court has specified that deliberate indifference requires that 'the official

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Leavitt*, 645 F.3d at 497 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); citing *Ruiz-Rolan v. Rullán*, 485 F.3d 150, 156 (1st Cir. 2007)). "Negligence in treating … a medical condition is insufficient to prove a constitutional violation." *Niemic v. UMass Corr. Health*, 89 F. Supp. 3d 193, 204 (D. Mass. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[I]n the First Circuit, when a plaintiff's 'allegations simply reflect a disagreement on the appropriate course of treatment[,] [s]uch a dispute with an exercise of professional judgment may present a colorable claim for negligence, but falls short of alleging a constitutional violation.'" *Id.* (second and third alterations in original) (quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)).

a. Hernia surgery[5]

It appears that Plaintiff alleges that he developed an umbilical hernia after, and as a result of, his rape by Long (Amended Compl. ¶¶ 65, 74). Plaintiff alleges that he was diagnosed with an umbilical hernia during a visit with a nurse at the federal transfer center in Oklahoma, who told him he would be referred for an ultrasound if he remained at the transfer facility for a sufficient amount of time (Amended Compl. ¶ 73). A medical record from Oklahoma attached to the initial complaint confirms the presence of a "[l]arge baseball like mass [that] protrudes when [Plaintiff] sits up." The bulge retracted without difficulty and was not evident when Plaintiff was standing up. He was not in distress. He was told to follow up with medical sick

---

[5] To the extent Plaintiff intends to assert that aspects of his physical medical care other than the refusal to operate on his hernia were deficient in violation of his Eighth Amendment rights, he has not sufficiently identified any serious medical need other than the hernia that he could reasonably contend required medical treatment that was denied or delayed.

call when he reached his destination "to establish … chronic care and formulate a new plan of care" (Dkt. No. 2-1 at 41).[6]

Plaintiff arrived at FMC Devens on or around March 1, 2018 (Amended Compl. ¶ 76). Plaintiff alleges that, on medical intake at FMC Devens, he asked for an examination and testing for his umbilical hernia.  He told Quist that he believed the hernia was due to staff's indifference and that he "should be given the surgery and made whole."  Quist told him that the BOP did not treat hernias and no test would be ordered (Amended Compl. ¶ 77).  A March 7, 2018 FMC Devens medical record for Plaintiff notes the presence of an umbilical hernia and includes "abdomen hernias" as an item for potential follow-up (Dkt. No. 1-2 at 46-47).  At some point in March 2018, Plaintiff had an appointment with Murray.  He asked Murray for examination by a specialist and a surgical consult with a plastic surgeon for his hernia.  Plaintiff alleges that Murray told him that FMC Devens would not treat his hernia and that surgery for his hernia was elective surgery that Plaintiff would need to obtain when he was released.  Murray also refused to prescribe the pain medication Plaintiff requested for the condition (Amended Compl. ¶ 80).

Plaintiff was issued a lower bunk pass on March 12, 2018.  It expired on May 31, 2018 (Dkt. No. 1-2 at 91).  On or around September 13, 2018, Plaintiff alleges that he had a treatment visit with Quist during which he told Quist that his umbilical hernia was extremely painful due to his new top bunk assignment.  According to Plaintiff, Quist interpreted the complaint as a request for a lower bunk assignment and told Plaintiff he did not qualify for a lower bunk pass. On January 4, 2019, Plaintiff submitted an inmate request to Murray requesting attention for six

---

[6] According to Plaintiff, he requested medical treatment for his umbilical hernia when he arrived at MDC Brooklyn (Amended Compl. ¶ 74).  Plaintiff's stay at MDC Brooklyn, however, was very short.  He alleges that he arrived at MDC Brooklyn on February 22, 2018 and arrived at FMC Devens on March 1, 2018 (Amended Compl. ¶¶ 74, 76).

(6) distinct medical problems he was experiencing, including – as number 6 – treatment for his hernia, which, since his move to a top bunk, had grown in size and was extremely painful (Dk. No. 1-2 at 88). Ruze replied that he would schedule Plaintiff for a chronic care visit at the next available appointment (Dkt. No. 1-2 at 88-89).

On or around January 22, 2019, Plaintiff had a chronic care appointment with Ruze. According to Plaintiff, this visit was a response to a request he filed after a November 2018 appointment with Quist. Plaintiff's medical records show that he requested a lower bunk pass due to his shoulder problems, skin lesions, and hip and back pains (Dkt. No. 1-2 at 129). On examination, Ruze observed that Plaintiff's abdomen "show[ed] a small bulge in midline above umbilicus consistent with an early ventral hernia v. rectus diastasis." Ruze opined, as to the hernia, that "no surgery [was] indicated at this point. Patient provided reassurance" (Dkt. No. 1-2 at 131-32). According to Plaintiff, Ruze told him that the BOP does not treat hernias, "that Plaintiff's hernia is considered elective/cosmetic and he could get it fixed when he is released" (Amended Compl. ¶ 109).

Applying the standards established by the Supreme Court and the First Circuit, "it is reasonable to conclude that an umbilical hernia satisfies the objective prong of the analysis, which requires the existence of a serious medical condition." *Birdsong v. Bishop*, Civil Action No. 06-CV-297-JMH, 2008 WL 5135325, at *13 (E.D. Ky. Nov. 26, 2008). *See Sanchez v. Sabol*, 539 F. Supp. 2d 455, 460 (D. Mass. 2008) ("[T]here can be no doubt that [the plaintiff] suffers an objectively serious condition because it obviously requires medical treatment.").

In *Williams v. Prison Health Servs., Inc.*, 167 F. App'x 555, 558-59 (7th Cir. 2006), the Seventh Circuit held that a prison medical service's decision to classify surgery for an umbilical hernia as elective across the board alleged an Eighth Amendment violation. *See also Fisher v.*

*Fed. Bureau of Prisons*, Case No. 4:19-cv-1169, 2020 WL 5250438, at \*12 (N.D. Ohio Sept. 3, 2020) (a blanket policy ban on treatment which does not consider an inmate's particular situation may in some circumstances violate the Eighth Amendment).   In the instant case, Plaintiff alleges that he was told that the BOP does not treat hernias and was told several times that surgery for his hernia was elective.   That medical care providers deemed surgery for *Plaintiff's* hernia elective when they examined him is far from an expression of a policy ban on all hernia surgery.  Plaintiff's medical records show that Quist, Murray, and Ruze monitored Plaintiff's hernia – along with his many other medical problems and complaints – at regular intervals.   As the Ninth Circuit has observed, "there are many cases, both reported and unreported, holding that prison medical personnel did not violate the Eighth Amendment even though they denied surgical treatment to an inmate with a reducible hernia comparable to [Plaintiff's]."   *Hamby v. Hammond*, 821 F.3d 1085, 1094 (9th Cir. 2016) (granting summary judgment to prison medical officials in § 1983 case on qualified immunity grounds; collecting cases).

In *Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006), an Eighth Amendment case addressing a denial of hernia surgery to a prison inmate, the Court explained that there are three types of hernia situations.   The first is a hernia that is strangulated, which is a medical emergency requiring immediate surgery; the second is a hernia that is reducible, but that is so painful or debilitating that surgery is required; and the third is "a hernia that is reducible and, given the dangers and risks inherent in any operation, can be managed through non-surgical means."   *Id.*  Plaintiff alleges pain from his hernia and a desire for surgery, but the amended complaint and the medical records attached as exhibits show that his complaints related to his hernia were of intermittent pain that he experienced primarily when he had to exit from a top bunk.   He did not report that his hernia otherwise restricted his activities of daily living.   The records show no

indication of an imminent risk of strangulation.  His January 2019 medical record is to the effect that, on examination, the hernia was small and did not require immediate surgery and that Ruze reassured Plaintiff about his condition.  Even if surgery was preferable from Plaintiff's vantage point, the disagreement between Plaintiff and Murray, Quist, and Ruze about the proper approach to treatment of Plaintiff's hernia does not support Plaintiff's claim of an Eighth Amendment violation by Murray, Quist, or Ruze.  *See Hamby*, 821 F.3d at 1092, 1094; *Brown v. Beard*, 445 F. App'x 453, 455-56 (3d Cir. 2011) (per curiam) (unpublished) (affirming dismissal of a claim that the refusal of hernia surgery rose to the level of an Eighth Amendment violation); *Sanchez*, 539 F. Supp. 2d at 460.  Accordingly, I recommend that these claims be dismissed pursuant to Rule 12(b)(6).

> b.  Inadequate Psychological Services.

In Plaintiff's opposition to the Massachusetts Defendants' Rule 12(b)(6) motion to dismiss, he argues at length that Fricker failed to provide him with adequate psychological services because she knew he distrusted BOP psychology staff members but refused to appoint him a victim advocate or arrange sufficient access for counselling with a community-based psychologist (Dkt. No. 99 at 3-15).  His claims against Anderson, Elraheb and Spaulding are based on the facts that they allegedly denied him access to a victim advocate who would supply mental health services, that the alternative treatment course of counseling with Pathways for Change was inadequate and ineffective, and that Spaulding violated PREA by not transferring Waslyk to another prison (Dkt. No. 99 at 7-8).  These contentions represent at least a shift in emphasis, inasmuch as the initial and the amended complaints were replete with claims that the defendants had violated Plaintiff's Eighth Amendment right to adequate mental health treatment

by failing to comply with PREA requirements and other prison regulations (Amended Compl. ¶¶ 60, 66, 82-83, 104, 114, 116, 121).

I assume that Plaintiff has adequately alleged a serious medical need for psychological services.  He reported a lengthy history of mental health treatment and several suicide attempts prior to incarceration (Dkt. No. 1-2 at 9), and he claims that he was coping with the psychological aftermath of a rape.  Further, he was prescribed psychotropic medications while incarcerated (e.g., Dkt. No. 1-2 at 9).  Accepting that Plaintiff required psychological services, it is nonetheless a "well-established premise that '[t]he right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice.'"  *Stone v. Evangelidis*, CIVIL ACTION NO. 18-10011-RGS, 2020WL 7405739, at *4 (D. Mass. Dec. 17, 2020) (alteration in original) (quoting *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981)).  "Courts are particularly reluctant to find deliberate indifference '[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment.'"  *Id.* at *5 (alteration in original) (quoting *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991)).

Plaintiff does not dispute that he was seen by Fricker and other members of FMC Devens' Psychology Services Department and that they remained available to him at all times for his psychological treatment needs.  FMC Devens psychologists' records of treatment sessions with Plaintiff reflect that the providers took care to tell him that they were available to provide services to him (e.g., Dkt. No. 1-2 at 113, 115).  The BOP provided Plaintiff with three counselling sessions with Pathways for Change, an outside organization (Dkt. No. 1-2 at 77-79, 100).  Plaintiff's dissatisfaction with Pathways for Change and the lack of a victim witness advocate is fairly described as a difference of opinion between Plaintiff and FMC Devens care providers about what was required to provide Plaintiff with adequate mental health treatment.

"A mere disagreement between a prisoner and the treating doctors about the proper course of medical treatment does not give rise to a constitutional violation under the Eighth Amendment." *Wittkowski v. Levine*, 382 F. Supp. 3d 107, 113 (D. Mass. 2019) (citing *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)); *see also Niemic*, 89 F. Supp. 3d at 205 (a doctor's decision not to refer the plaintiff to an outside specialist or perform certain tests rested "firmly within her medical discretion" and was not actionable as an Eighth Amendment violation).

Plaintiff's general claims about the quality of the psychological services he received at FMC Devens fall well short of stating an Eighth Amendment violation.  He may (or may not) state claims of medical malpractice based on his distrust of BOP psychologists, but "[d]eliberate indifference requires more than simple negligence or medical malpractice."  *Wittkowski*, 382 F. Supp. 3d at 113 (citing *Estelle*, 429 U.S. at 105-06).  Plaintiff's allegations about failures to comply with PREA provisions or regulations or related BOP policies are unavailing.  Courts have consistently ruled that PREA and the regulations promulgated thereunder do not give rise to a direct cause of action or to a claim asserted under *Bivens* or § 1983.  *See Williams v. Wetzel*, No. 1:17-cv-79, 2020 WL 583983, at *17 (M.D. Pa. Feb. 6, 2020) (collecting cases); *Njos v. United States*, Civil No. 3:14-CV-1960, 2015 WL 5695658, at *6 (M.D. Pa. Sept. 24, 2015), *adopted in relevant part*, 2016 WL 1720816, at *3 (M.D. Pa. Apr. 29, 2016).  Plaintiff's Eighth Amendment claims based on alleged violations of the PREA legislation or regulations are unavailing.  Similarly, "prison regulations do not define the scope of an inmate's constitutional rights."  *Njos*, 2015 WL 5695658, at *7.  To the extent Plaintiff relies on regulations other than those promulgated under PREA to support his claim that the psychological services he received at FMC Devens violated his constitutional rights, those claims also fail.

This is not a case in which Plaintiff alleges that the defendants knew about and ignored a substantial risk of self-harm.  Plaintiff's counselling records show that members of the FMC Devens Psychology Services Department inquired about Plaintiff's state of mind when he treated with them and that he denied suicidal ideation (Dkt. No. 1-2 at 49, 51, 122).  He has not alleged that he engaged in self-harming behavior or exhibited behavior suggesting he was mentally disturbed.  *Contrast Stone*, 2020 WL 7405739, at \*2 (the plaintiff engaged in numerous acts of self-harm and was obviously mentally disturbed).  The FMC Defendants did not suggest that Plaintiff did not require mental health services and they did not deny him such services.  He has not complained about a lack of psychotropic medication or the choice of the medication.  Although Plaintiff is adamant that the psychological counselling services provided to him while he was incarcerated at FMC Devens (and in other BOP facilities) were – from his point of view – inadequate and in violation of PREA requirements, it cannot reasonably be found, based on Plaintiff's Amended Complaint and the exhibits attached thereto, that the mental health "care provided [was] '"so inadequate as to shock the conscience."'"  *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 162 (1st Cir. 2006) (quoting *Torraco*, 923 F.2d at 235).

For the foregoing reasons, I recommend that Plaintiff's Eighth Amendment claims against Elrahed, Anderson, Fricker, Taylor, and Spaulding related to the psychological services provided to Plaintiff at FMC Devens be dismissed for failure to state a claim.

3. Plaintiff's First Amendment Retaliation and Fifth Amendment Due Process Claims Should be Dismissed.[7]

---

[7] Plaintiff's Fifth Amendment claims are not clearly articulated.  He has not alleged an Equal Protection claim.  Therefore, I assume that he contends that he was entitled to notice and a hearing before or at the time he was assigned to the SHU.

Plaintiff alleges that certain of the Massachusetts Defendants retaliated against him and restricted his liberty without just cause in early August 2018 after he complained about Waslyk's presence at FMC Devens, asked that Waslyk be reassigned to a different facility, and included in his complaint the allegation that BOP staff members at FCI Allenwood had failed to investigate his PREA claim and improperly returned him to a cell with Wyslak (Amended Compl. ¶¶ 86-93). Exhibit W to Plaintiff's complaint shows the BOP issued an order for his placement in the SHU at FMC Devens on or around August 20, 2018 pending an SIS investigation. He was given a copy of the order stating the reason for his SHU placement at the time he was transferred to the SHU (Dkt. No. 1-2 at 62). Plaintiff asserts that he is entitled to damages from Taylor because Taylor retaliated against him by placing him in the SHU following his complaint about Waslyk's presence in his unit at FMC Devens and that Taylor coerced a statement from him that exonerated prison officials at FCI Allenwood for their failure to conduct a PREA investigation into Plaintiff's complaints about Waslyk's conduct at FCI Allenwood. He claims that Fricker had a duty, which she shirked, to report Taylor's alleged misconduct to her supervisors and that she retaliated against Plaintiff by discussing his private medical matters within earshot of other prisoners. He argues that Spaulding is liable for not assigning Waslyk to another facility (Dkt. No. 99 at 18-20; Amended Compl. ¶ 153).

When a state or local official violates an individual's federal constitution rights, that official may be liable to the injured individual pursuant to 42 U.S.C. § 1983. There is no similar statutory remedy available under federal law. The judicially implied remedy available under *Bivens* exists to fill this gap to some extent. *See Thomas v. Paul*, Case No. 16-cv-12-SM, 2019 WL 4451349, at *2 (D.N.H. Sept. 17, 2019); *Beach v. Smith*, 150 F. Supp. 3d 41, 45 (D. Me. 2015). While "the boundaries of *Bivens*-type liability are hazy," *González v. Vélez*, 864 F.3d 45,

52 (1st Cir. 2017), "the Supreme Court has repeatedly confirmed that it has not extended a *Bivens* remedy to First Amendment claims." *Johnson v. Burden*, 781 F. App'x 833, 836 (11th Cir. 2019) (per curiam) (unpublished) (citing *Iqbal*, 556 U.S. at 675; *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); noting that in *Wood v. Moss*, 572 U.S. 744, 757 (2014), the Supreme Court stated that it had several times assumed without deciding that *Bivens* extended to First Amendment claims)); *Thomas*, 2019 WL 4451349, at *3 ("The Supreme Court has never recognized a *Bivens* remedy for First Amendment claims, and it has affirmatively declined to extend a *Bivens* remedy to claims invoking the First Amendment.").

In *González*, the First Circuit observed that the Supreme Court had recently "made plain its reluctance to extend the *Bivens* doctrine to new settings," *González*, 864 F.3d at 52 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)), and that:

> [t]o this end, the Court specified that when a *Bivens*-type claim is lodged, the appropriate analysis must begin by determining whether the plaintiff is seeking to extend the *Bivens* doctrine to a new context. *See Abbasi*, 137 S. Ct. at 1864. For this purpose, a context is considered new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 1859. Once is it determined that the context is new, the next step is to ask whether an alternative means of obtaining relief exists and, if so, whether "special factors" counsel hesitation in extending the reach of the *Bivens* doctrine. *Id.* at 1865.

*Id.* at 52-53. "[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857. The Supreme Court has recognized *Bivens* claims under the Fourth Amendment for unreasonable searches and seizures, under the Due Process Clause of the Fifth Amendment for gender discrimination by a member of Congress, and under the Eighth Amendment for denial of adequate medical care to federal prisoners. *See González* at 52-53 (citing *Carlson v. Green*, 446 U.S. 14, 20-23 (1980); *Davis v. Passman*, 442 U.S. 228, 243-44 (1979); *Bivens*, 403 U.S. at 389).

a.  First and Fifth Amendment Claims Related to Prison Discipline, Investigations, and Alleged Retaliation Represent a New Context for *Bivens* Claims.

"'[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous *Bivens* cases.'" *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) (quoting *Abbasi*, 137 S. Ct. at 1864). "[B]ecause neither the Supreme Court nor [the First Circuit has] expanded *Bivens* in the context of a prisoner's First Amendment [retaliation claims] or Fifth Amendment procedural due process claims arising out of a prison disciplinary process, the circumstances of [Thomas's] case … plainly present a 'new context' under *Abbasi*." *Id.*  There is an emerging consensus from federal courts across the country following *Abbasi* rejecting a *Bivens* remedy for First and Fifth Amendment claims related to prison discipline, investigations, and alleged retaliation.

b.  Alternative Remedial Structure and Special Considerations.

"'[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 1154 (quoting *Abbasi*, 137 S. Ct. at 1858).  In *Vega*, the Ninth Circuit held that *Bivens* did not provide a remedy for First or Fifth Amendment claims related to prison discipline because the prisoner plaintiff "had alternative means for relief against the alleged violations of his First and Fifth Amendment rights …." *Id.*  As an initial matter, as a federal prisoner, the plaintiff in *Vega* could seek formal review of any aspect of his confinement under the Administrative Remedy Program ("ARP"). *Id.* (citing 28 C.F.R. § 542.10(a)).  Second, in an allegation that echoes Plaintiff's allegation in the instant case, the plaintiff in *Vega* complained that he had been placed in a more restrictive setting based on a false incident report.  *Id.* at 1150.  The *Vega* court noted that the plaintiff was entitled to seek review of the allegedly false incident report under 28 C.F.R. § 541.7(d).  *Id.* at

1154.  It did not trouble the *Vega* court that remedies available through the administrative process did not include money damages.  The court held that it would be imprudent to expand *Bivens* into the prison disciplinary process "given the Court's admonition that 'any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'"  *Id.* at 1155 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).  *See also Petzold v. Rostollon*, 946 F.3d 242, 252 n.46 (5th Cir. 2019) (noting but not deciding that First Amendment prisoner retaliation claims are new in the *Bivens* context and unlikely to be implied); *Johnson v. Burden*, 781 F. App'x 833, 836-37 (11th Cir. 2019) (per curiam) (unpublished) (holding that the Supreme Court had not recognized a First Amendment retaliation claim under *Bivens* and remanding the case so the district court could determine in the first instance whether, post-*Abbasi*, it was appropriate to extend a *Bivens* remedy where the plaintiff prison inmate claimed retaliation because he filed grievances); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 59-61 (E.D.N.Y. 2017) (post-*Abbasi*, the court declined to recognize a *Bivens* remedy for the prisoner plaintiff's claim that he had been denied meaningful reviews of his assignment to the SHU).

Other courts have focused on the special circumstances of prison administration as counseling against recognition of a *Bivens* remedy in circumstances similar to those presented in the instant case.  *See Bistrian v. Levi*, 912 F.3d 79, 94-95 (3d Cir. 2018) (declining to extend *Bivens* to a prisoner's claims of punitive detention and retaliation under the First Amendment because "[t]he warden and other prison officials have – and indeed must have – the authority to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is deserved and for how long"); *Gonzalez*, 269 F. Supp. 3d at 61 (finding that Congress does not want the court to create

a *Bivens* remedy for a prisoner's complaints about his SHU assignment because "Congress has been active in the area of prisoner's rights and its actions do not support the creation of a new *Bivens* claim"); *Alexander v. Ortiz*, Civil Action No. 15-6981(JBS-AMD, 2018 WL 1399302, at *7-8 (D.N.J. Mar. 20, 2018) (although the prisoner plaintiff had no alternative remedy for his discrimination complaint, the court would not imply a *Bivens* remedy because prison administration is peculiarly within the expertise of the legislative and executive branches) (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)); *Muhammad v. Gehrke*, No. 2:15-cv-00334-WLT-MJD, 2018 WL 1334936, at *4  (S.D. Ind. Mar. 15, 2018) (there is no *Bivens* remedy for a prisoner's claim that he was retaliated against for filing grievances and requests for medical treatment because the prisoner had an alternative remedy in the form of the BOP administrative process and because prison administration should be left to prison administrators except in extraordinary circumstances).  As far as I have been able to determine, following *Abbasi*, every court to address the issue has declined to recognize *Bivens* claims asserted by federal prison inmates based on the First and Fifth Amendments.

Here, Thomas had remedies available for his retaliation and due process claims.  An inmate in a federal prison may "seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. § 542.10(a).  An inmate complaint about assignment to an SHU is subject to a separate administrative process which allows a prisoner to challenge the basis of such an assignment.  *See* 28 C.F.R. § 541.20; *Vega*, 881 F.3d at 1154; *Thomas*, 2019 WL 4451349, at *5 ("In circumstances where the BOP Administrative Remedy Program ("ARP") could provide some relief for the type of claims at issue, the ARP can also be deemed to be an 'alternative remedial structure[.]'") (quoting *Abbasi*, 137 S. Ct. at 1858).

Further, as other courts that have addressed the issue have ruled, special considerations counsel against recognizing a *Bivens* remedy for the claims asserted by Plaintiff about alleged acts, including retaliatory acts, and omissions by correctional officials responding to Plaintiff's myriad complaints about the conditions of his confinement.  In *Abbasi*, the Supreme Court directed caution about recognizing *Bivens* actions in contexts in which there is a "risk of disruptive intrusion by the Judiciary into the functioning of other branches …."  *Abbasi*, 137 S. Ct. at 1860.  The Court has cautioned that courts are not well-equipped to address problems in prison discipline and administration.  *See Turner*, 482 U.S. at 84-85; *see also Bistrian*, 912 F.3d at 94-95.  Accepting Plaintiff's claims against Taylor and Fricker would require the court to delve into the adequacy of the PREA investigation conducted at FCI Allenwood and decide whether Taylor and Fricker had retaliatory motives in their dealings with Plaintiff when he was sent to the SHU.  Plaintiff is also asking the Court to decide that Spaulding was required (under PREA) to transfer Waslyk based on Plaintiff's administrative complaint.  These are matters that the Supreme Court has said are best left to prison administrators in the absence of a legislative directive for review and regulation by the federal courts.

c.  Qualified Immunity

"Qualified immunity provides defendant public officials 'an immunity from suit rather than a mere defense to liability.'"  *Penate v. Hanchett*, 944 F.3d 358, 365 (1st Cir. 2019) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  There is a two-part test that applies.  The first question is whether the facts as alleged make out a violation of a constitutional right; if a plaintiff has stated a violation of a constitutional right, then the court must consider "'whether the right was 'clearly established' at the time of the defendant's alleged violation.'"  *Id.* at 366 (quoting *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 8 (1st Cir. 2013)).  The

Massachusetts Defendants have argued that they are entitled to qualified immunity in connection with Plaintiff's claims (Dkt. No. 86 at 11-16).

It is black-letter law that the Eighth Amendment protects a prison inmate's right to adequate medical care and the standards governing what constitutes adequate medical care are set forth above and are well-settled. *See Abbasi*, 137 S. Ct. at 1855; *Abernathy*, 984 F.3d at 6.  In these circumstances, I recommend that the District Court reject the Massachusetts Defendants' qualified immunity arguments insofar as those arguments are advanced in connection with Plaintiff's Eighth Amendment claims for inadequate medical treatment.

The story is different in connection with Plaintiff's First and Fifth Amendment claims. Even before *Abbasi*, the boundaries of the law governing *Bivens* claims under the First and Fifth Amendments were "hazy."  *González*, 864 F.3d at 52.  When the Supreme Court "made plain its reluctance to extend the *Bivens* doctrine to new settings," *id.*, the viability of *Bivens* claims under the First and Fifth Amendments was immediately undermined.  As is set forth above, I do not believe that facts alleged by Plaintiff make out violations of his rights under the First and Fifth Amendments that would give rise to *Bivens* claims.  If the District Court disagrees with this conclusion, however, I recommend that the District Court find that Massachusetts Defendants Taylor, Anderson, Fricker, Elraheb, and Spaulding are entitled to qualified immunity in connection with Plaintiff's First and Fifth Amendment claims.  There is no binding First Circuit authority recognizing such claims, and, as is set forth above, case law from other jurisdictions tends to show that Plaintiff is not entitled to assert *Bivens* claims against the Massachusetts Defendants under the First and Fifth Amendments.  There was no "clarity in the law" in the First or any other Circuit with respect to Plaintiff's First and Fifth Amendment claims when Plaintiff was held at FMC Devens.  To the extent Plaintiff has stated viable *Bivens* claims under the First

36

and Fifth Amendment – and in my view, he has not – he has not shown that the Taylor, Anderson, Spaulding, Elraheb, or Fricker "should have understood that [their] acts or omissions jeopardized [Plaintiff's] constitutional rights." *Id.* If the District Court finds that Plaintiff has stated viable First and Fifth Amendment claims, I recommend that the Court further find that Taylor, Anderson, Elraheb, Fricker, and Spaulding are entitled to qualified immunity and, therefore, further recommend dismissal of these claims on the basis of qualified immunity.

For all of the foregoing reasons, I recommend that the court grant the Massachusetts Defendants' Rule 12(b)(6) motion to dismiss.

V.  Possible Transfer to the Southern District of Indiana Pursuant to
     28 U.S.C. § 1404(a)

If the District Court adopts my recommendation to grant the Massachusetts Defendants' Rule 12(b)(6) motion to dismiss, then I recommend that the District Court consider transferring the claims against the Foreign Defendants to the Southern District of Indiana, where FCI Terre Haute is located. Plaintiff's allegations against defendants Bell, Carmichael, Baker, Norris, Worthington, Pointer, Morley, Joslyn, Conner, and Cook (and certain John Does) are based on events that occurred at FCI Terre Haute in Indiana. Plaintiff has not shown that any of the Foreign Defendants has any connection to Massachusetts.[8] There is the possibility that if these claims are dismissed for lack of personal jurisdiction by this Court, the re-filing of the claims may be barred by the Indiana statute of limitations. A transfer of the claims against the Foreign

---

[8] So far as appears from Plaintiff's filings, DeZayas has no more connection to the Southern District of Indiana than he has to the District of Massachusetts. If the District Court rules that DeZayas has not waived his defense of lack of personal jurisdiction, then the claims against him (which rest on a single treatment encounter with Plaintiff) should not be transferred. If the District Court rules that he has waived his defense of lack of personal jurisdiction, he can assert his defenses to Plaintiff's claim against him in the United States District Court for the Southern District of Indiana.

Defendants may be appropriate under 28 U.S.C. § 1404(a), which provides that a district court may "[f]or the convenience of parties and witnesses, in the interest of justice, transfer any civil action to any other district or division where it might have been brought …." *See Widi v. Fed. Bureau of Prisons*, Civil No. 14-cv-160-SM, 2016 WL 11263218, at *6-7 (D.N.H. May 2, 2016), *adopted in relevant part*, 2016 WL 4411398, at *2 (D.N.H. Aug. 19, 2016).  "It is well settled that a court may transfer a case sua sponte pursuant to 28 U.S.C. § 1404(a) …." *Desmond v. Nynex Corp.*, 37 F.3d 1484, 1994 WL 477479, at *3 (1st Cir. Oct. 20, 1994) (unpublished, table disposition).

VI.    <u>Recommendation</u>

For the foregoing reasons, I recommend that the District Judge:

(1) grant Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. No. 95);

(2) deny Defendants' Rule 12(e) Motion for a More Definite Statement (Dkt. No. 78);

(3) deny Defendants Corey Pointer, Christina Morley, Erin Conner, J.R. Bell, Tracy Joslyn, Matthew Worthington, Jacqueline Carmichael, Karl Norris, Jamie Baker, and Gabriel DeZayas Motion to Dismiss Plaintiff's Complaint (Dkt. No. 83) based on the raise or waive rule.  If, however, the court declines to find waiver of the Rule 12(b)(2) and 12(b)(5) defenses in these circumstances, I recommend that the District Court grant the defendants' motion without prejudice based on lack of personal jurisdiction and insufficient service of process;

(4) find as moot Defendants Jamie Baker, J.R. Bell, Jacqueline Carmichael, Erin Conner, Gabriel DeZayas, Tracy Joslyn, Christina Morely, Karl Norris, Corey Pointer, and Matthew Worthington's Amended Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(5) and/or for a More Definite Statement (Dkt. No. 105) in light of the Court's ruling on the Foreign Defendants' Motion at Docket Number 83;

(5) grant Defendant Stephen Spaulding, Dave Taylor, Daniel Quist, Scott Murray, Kimo Elraheb, Patricia Ruze, Kelly Fricker, and Paul Anderson's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 85).

(6) Consider transferring the claims against the Foreign Defendants to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). [9]


Dated: March 3, 2021                              /s/ Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  United States Magistrate Judge

---

[9] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.